**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**



## SUPREME COURT OF GEORGIA
Case No. S25C0786

June 24, 2025

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

JAMESON ANDREW ESTES et al. v. JOHN JOSEPH PIERACCINI et al.

The Supreme Court today denied the petition for certiorari in this case.

*Warren, PJ, and Bethel, Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur. Peterson, CJ, disqualified.*

Court of Appeals Case No. A24A1796

**SUPREME COURT OF THE STATE OF GEORGIA**

Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.

Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

S25C0786.  ESTES et al. v. PIERACCINI et al.

BETHEL, Justice, concurring.

I agree with the decision of the Court to deny certiorari in this case. I write to highlight an issue presented by this case that, in my view, the General Assembly is better suited to address.

Under our Evidence Code, "[c]ommunications between psychiatrist and patient" are privileged and "excluded from evidence on grounds of public policy." OCGA § 24-5-501 (a) (5). Here, the trial court found — and the Court of Appeals agreed — that Petitioner Estes was not entitled to assert the psychiatrist-patient privilege because he was not a "psychiatrist" within the meaning of the statute. The statute, however, does not define "psychiatrist." Rather, that definition is a creature of purely our own case law, specifically, this Court's decision in *Wiles v. Wiles*, 264 Ga. 594 (448 SE2d 681) (1994). And the proper scope of that case forms the basis for the present dispute.

In *Wiles*, a divided court rejected the notion that "psychiatrist," as used in former OCGA § 24-9-21 (5), the predecessor to current OCGA § 24-5-501 (a) (5),[1] is limited to "medical doctors specially trained to practice psychiatry." *Wiles*, 264 Ga. at 596 (2). Rather, pointing to the proliferation of mental health care into the practice of medicine generally, this Court settled on a broader definition of "psychiatrist," construing the term to mean "a person licensed to practice medicine, . . . who devotes a substantial portion of [his] time engaged in the diagnosis and treatment of a mental or emotional condition[.]" Id. at 597 (2). We left it to the trial court's discretion to

---

[1] Though *Wiles* was decided under Georgia's former Evidence Code, I suspect — and the parties do not argue otherwise — that *Wiles* remains the governing interpretation of "psychiatrist" as used in OCGA § 24-5-501 (a) (5). As this Court has explained, "[i]f there is no materially identical Federal Rule of Evidence and a provision of the old Evidence Code was retained in the new Code, our case law interpreting that former provision applies." *State v. Almanza*, 304 Ga. 553, 556-557 (2) (802 SE2d 1) (2018). The language of former OCGA § 24-9-21 (5) was carried forward into OCGA § 24-5-501 (a) (5) in substantively identical form. Compare OCGA 24-5-501 (a) (5) ("There are certain admissions and communications excluded from evidence on grounds of public policy, including, but not limited to, the following: . . . Communications between psychiatrist and patient."), with OCGA § 24-9-21 (5) ("There are certain admissions and communications excluded on grounds of public policy. Among these are: . . . Communications between psychiatrist and patient."). And current OCGA § 24-5-501 (a) (5) has no materially identical counterpart in the Federal Rules of Evidence. Thus, it appears that *Wiles* continues to be good law.

determine "what constitutes a substantial portion of a doctor's time," id. at 598 (2), and the Petitioner here spills much ink challenging the wisdom of that decision, advancing an assortment of policy considerations that he says warrant our reconsideration of *Wiles*'s judicially malleable substantial-portion standard.

But policy matters of the sort put forward by the Petitioner are better left to the General Assembly, a view I share with the authors of the dissenting opinions filed in *Wiles*. See id. at 600 (Hunt, CJ, dissenting) ("Rather than voting for the judicial legislation proposed by the majority opinion, I would refer this matter to the General Assembly for its consideration as to whether the statute should be amended so as to protect communications of this sort regardless of the kind of practice engaged in by the person to whom the information is communicated."); id. at 601 (Carley, J, dissenting) ("The majority opinion is ultimately premised solely upon policy considerations that may or may not prompt the General Assembly to follow the lead of other state legislatures which have, by statute, broadened the scope of the 'patient-psychiatrist' privilege. However,

3

the authority of the courts is limited to interpreting the existing statutory law as adopted by the legislative branch of government."). Though the policy considerations underscoring the *Wiles* decision seem to have been borne out in the intervening years as mental health care appears to have been integrated into nearly all aspects of the practice of medicine, the task of ensuring that the statutory psychiatrist-patient privilege conforms to our ever-evolving times is one for the General Assembly, not this Court. So mental health care providers like the Petitioner in this case should direct their calls for reform to that body instead. Indeed, aside from straining the limits of the judicial power, it seems unlikely, in my view, that this Court could provide a "better" standard through decisional law.